# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN J. POWERS, | No. 4:19-CV-00990 |
| Petitioner, | (Judge Brann) |
| v. | |
| GENE BEASLEY, | |
| Respondent. | |

## MEMORANDUM OPINION

### JUNE 17, 2020

Presently before the Court is Petitioner John J. Powers' petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2241, challenging two institutional disciplinary decisions that resulted in, *inter alia*, a loss of good time credits.[1] Respondent submitted an answer,[2] and Petitioner has now filed a reply.[3] For the reasons that follow, the petition will be denied.

## I. BACKGROUND

Petitioner is presently incarcerated at United States Penitentiary at Allenwood in White Deer, Pennsylvania, and has a projected release date of August 8, 2022.[4]

---

[1] Doc. 1.
[2] Doc. 6.
[3] Docs. 7, 8.
[4] Doc. 1.

### A. Incident Report No. 3180055

On October 12, 2018, a corrections officer responded to a duress alarm from Petitioner's cell.[5] Upon arrival to the cell, the corrections officer asked Petitioner what the medical emergency was.[6] Petitioner stated that he wished to speak with a case manager.[7] The officer advised Petitioner that the alarms were only to be used for medical emergencies.[8] Powers responded stating "Well fuck you and go right me a shot for it."[9] He then activated the duress alarm again.[10]

Petitioner was given a copy of the incident report on October 12, 2018.[11] On October 15, 2018, the Unit Discipline Committee ("UDC") referred the matter to the Discipline Hearing Officer ("DHO").[12] Also on that day, Petitioner received a copy of his inmate rights and the notice of discipline hearing before the DHO.[13] Petitioner declined to have a staff representative for the disciplinary hearing.[14]

The disciplinary hearing before the DHO was held on November 5, 2018.[15] At it, Petitioner denied the charges, and stated that he pressed the duress alarm and

---

[5] Doc. 6 at 2-3.
[6] *Id.* at 3.
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*

told the officer he didn't care.[16] The DHO documented the evidence relied on to make his determination.[17] The DHO upheld the charge of Code 312, insolence toward staff, noting it was Petitioner's third offence.[18] Petitioner was sanctioned with the loss of fifteen days of good conduct time.[19] The DHO noted that a psychologist had provided documentation stating that Petitioner was "psychologically responsible" for his actions and behavior that constituted the charge.[20] Petitioner received the DHO report on November 15, 2018.[21]

### B. Incident Report No. 3205811

On December 24, 2018, while a correctional officer was making rounds at USP Allenwood, Petitioner stated that he had just self-mutilated himself.[22] The officer notified health services staff and the operations lieutenant.[23] Petitioner was taken to the medical exam room for treatment.[24]

Petitioner received a copy of the incident report on December 25, 2018.[25] On January 2, 2019, the UDC referred the matter to the DHO.[26] Also on that day,

---

[16] *Id.* at 3-4.
[17] *Id.* at 4.
[18] *Id.* at 4.
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.* at 4-5.
[23] *Id.* at 5.
[24] *Id.*
[25] *Id.*
[26] *Id.*

Petitioner was provided with a copy of his inmate rights and the notice of discipline hearing before the DHO.[27]

The disciplinary hearing before the DHO was held on January 16, 2019.[28] Petitioner stated that "[t]his incident report should have never been written." And that"[t]his code is not for psychological self-mutilation."[29] Petitioner also submitted a two page written statement for consideration.[30] Petitioner did not request witnesses, and he declined having a staff representative.[31] The DHO documented the evidence relied on to make his determination.[32] He upheld a charge of Code 228, tattooing or self-mutilation, for which Petitioner was sanctioned with the loss of 27 days of good conduct time.[33] In the report, the DHO noted that a psychologist had provided documentation stating Petitioner was "psychologically responsible" for his actions and behavior that constituted the charge.[34] The DHO written report was delivered to Petitioner on January 17, 2019.[35]

---

[27] *Id.*
[28] *Id*.
[29] *Id.*
[30] *Id.* at 5-6.
[31] *Id.*
[32] *Id.* at 6.
[33] *Id.*
[34] *Id.*
[35] *Id.*

## II. DISCUSSION

### A. Legal Standard

A habeas corpus petition is the proper mechanism for a federal prisoner to challenge the "fact or duration" of his confinement, including challenges to prison disciplinary proceedings, that affect the length of confinement, such as deprivation of good time credits.[36] A challenge to a disciplinary action resulting in the loss of good conduct time is properly brought pursuant to § 2241, "as the action could affect the duration of the petitioner's sentence."[37]

### B. Analysis

In his petition, Plaintiff claims that his rights were violated because he was found guilty and sanctioned for behavior that constitutes a symptom of mental health illness while confined to a mental health unit and that the wrong standard was used to determine his responsibility for the charge. The relevant inquiry for the Court is whether Petitioner received due process, and the Court concludes that he did.

Prisoners are guaranteed certain due process protections when a prison disciplinary proceeding may result in the loss of good time credits.[38] "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply

---

[36] *See Preiser v. Rodriguez*, 411 U.S. 475, 498–99 (1973); *Muhammad v. Close*, 540 U.S. 749 (2004); *Edwards v. Balisok*, 520 U.S. 641 (1997); *Wilkinson v. Dotson*, 544 U.S. 74 (2005).
[37] *Queen v. Miner*, 530 F.3d 253, 254 n.2 (3d Cir. 2008).
[38] *See Wolff v. McDonnell*, 418 U.S. 539, 564-65 (1974).

of rights due a defendant in such proceedings does not apply."[39] The due process protections afforded an inmate must include (1) a written notice of the charges at least twenty-four hours prior to a hearing; (2) an opportunity to call witnesses and present evidence in his defense; (3) an opportunity to receive assistance from an inmate representative; (4) a written statement of the evidence relied on and the reasons for the disciplinary action; and (5) an appearance before an impartial decision making body.[40] Additionally, the revocation of good time only satisfies the minimum requirements of procedural due process when the findings of the prison disciplinary board are supported by "some evidence" in the record.[41] This standard is minimal and does not require an examination of the entire record, an independent assessment of the credibility of witnesses, or a weighing of the evidence.[42] The standard is simply whether "there is any evidence in the record that could support the conclusion reached by the disciplinary board."[43]

Here, Petitioner was provided with all the due process safeguards identified in *Wolff*. For both incident reports, Petitioner received written notice of the charges against him at least twenty-four hours prior to the hearings; he had an opportunity to call witnesses and present evidence in his defense, which he declined; he had an

---

[39] *Id.* at 556.
[40] *See Crosby v. Piazza*, 465 F. App'x 168, 171-72 (3d Cir. 2012) (citing *Wolff*, 418 U.S. at 563-71).
[41] *Lang v. Sauers*, 529 F. App'x 121, 123 (3d Cir. 2013) (citing *Superintendent v. Hill*, 472 U.S. 445, 454 (1985)).
[42] *Id.* (citing *Thompson v. Owens*, 889 F.2d 500, 502 (3d Cir. 1989)).
[43] *Id.* (quoting *Hill*, 472 U.S. at 455-56).

opportunity to receive assistance from a representative, which he also declined; he appeared before an impartial decision making body; and he received a written statement of the evidence relied on and the reasons for the disciplinary action.[44]

In addition, the disciplinary decisions were supported by "some evidence." Here, this Court's role is limited to determining whether "some evidence" exists in the record to support the DHO's decision; the Court does not reassess the evidence, take new evidence, or evaluate witness credibility.[45]  For each charge, the DHO relied on the incident report, the statements of the corrections officers involved, and the psychologist's report.  Because there is some evidence in the record to support violations of Code 312 and 228, Petitioner's due process rights were not violated.

Petitioner additionally argues that his behavior constitutes a symptom of mental illness and that the wrong standard was used "to determine responsibility as opposed to competency."  After each incident, a psychologist conducted a clinical interview and mental status exam of Petitioner.[46]  That psychologist noted Petitioner's diagnosis of Narcissistic Personality Disorder but reported that his clinical impression of Petitioner is that he "does not have a major mental disease or

---

[44] *See Wolff*, 418 at 563-71.
[45] *See, e.g.*, *McGee v. Scism*, 463 F. App'x 61, 62 (3d Cir. 2012) ("The 'some evidence' standard does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence."); *Perez v. Rectenwald*, No. 12-cv-2114, 2013 WL 5551266, at *4 (M.D. Pa. Oct. 8, 2013) ("The Court's responsibility under *Hill* is not to weigh this evidence or assess its probative value, but merely to determine that at least some evidence exists to support the conviction").
[46] *See* Doc. 6-1 at 24.

defect that makes him irresponsible for his behavior or not competent to understand the DHO process" and that he exhibits "behavior consistent with anger and irritability, also related to his diagnosis of Narcissistic Personality Disorder."[47]

To the extent that Petitioner argues that he was not competent to participate in the hearings or that he was not responsible for his behavior, as Respondent correctly points out, all due process requirements were provided to Petitioner, some evidence supports the decision in the record, and the DHO reasonably relied upon the professional opinion of a psychologist that the Petitioner was competent and responsible for his actions. The regulations governing disciplinary proceedings provide, in pertinent part:

> If it appears that you are mentally ill at any stage of the disciplinary process, you will be examined by mental health staff.
>
> (a) Competency to Participate in Disciplinary Proceedings. If evidence indicates that you cannot understand the nature of the disciplinary proceedings, or cannot help in your own defense, disciplinary proceedings may be postponed until you are competent to participate. The Unit Disciplinary Committee or Discipline Hearing Officer will make this decision based on evidence, including evidence presented by mental health staff.
>
> (b) Responsibility for Conduct. You will not be disciplined for conduct committed when, as the result of a severe disease or defect, you were unable to appreciate the nature and quality, wrongfulness of the act. The UDC or DHO will make this decision based on evidence, including evidence presented by mental health staff.[48]

---

[47] *Id.*
[48] 28 C.F.R. § 541.6.

This process was adhered to in Petitioner's case. He was examined by a psychologist after each incident; the psychologist found him to be competent and responsible for his actions; and the DHO relied on the professional opinion of the psychologist to determine Petitioner's competency and responsibility. As another court has found in these circumstances, the reliance on the opinion of a psychologist that a prisoner is competent for a DHO hearing and responsible for his actions comports with the strictures of due process.[49] Therefore, I conclude that there is no merit to Petitioner's contention that he could not be responsible for his actions or that the wrong standard was used to determine his responsibility or competency.

Finally, to the extent Petitioner also argues that the losses of fifteen days and twenty seven days of good time credit violate the Eighth Amendment because they are grossly disproportionate to the severity of the offense,[50] the Court notes that they are within the range of available sanctions for violations of Code 312 and 228.[51] As such, the Court finds that the sanction imposed on Petitioner did not violate the Eighth Amendment.

---

[49] *See Herczech v. Terry O'Brien*, No. 12-cv-140, 2013 WL 3820019 (N.D.W. Va. July 24, 2013) (citing cases).

[50] *See Rummel v. Estelle*, 445 U.S. 263, 271-74 (1980).

[51] *See* 28 C.F.R. § 541.3. *See also Shelton v. Jordan*, 613 F. App'x 134, 135 (3d Cir. 2015) ("[g]iven the severity of [petitioner's] offenses, and because the sanctions fall within the applicable range permitted by the regulation, we conclude that the punishment here did not violate the Eighth Amendment").

## III. CONCLUSION

For the reasons set forth above, the Petition will be denied. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge